UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STANLEY PACE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JOS DANIEL,<br><br>　　　　　Defendant. | CASE NO. C20-1455JLR<br><br>ORDER DENYING MOTION TO DISMISS |

## I.　INTRODUCTION

Before the court is *pro se* Defendant Jos Daniel's motion to dismiss Plaintiff Stanley Pace's complaint. (MTD (Dkt. # 7); Reply (Dkt. # 11).) Mr. Pace opposes the motion. (Resp. (Dkt. # 9).) Having considered the motion, the parties' submissions regarding the motion, the relevant portions of the record, and the applicable law,[1] the court DENIES Mr. Daniel's motion to dismiss.

---

[1] Neither party requests oral argument (MTD at 1; Resp. at 1), and the court finds that oral argument would not be helpful, *see* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER DENYING MOTION TO DISMISS - 1

## II. BACKGROUND

This matter centers on the domain name "celluvation.com," owned by Mr. Pace, and whether it infringes on the "Celluvation" trademarks registered by Mr. Daniel.[2] (*See* Compl. (Dkt. # 1) ¶ 1.) Mr. Pace is in the business of registering domain names and owns over 60,000 domain names. (*Id.* ¶ 8.) After purchasing the domain names, he purportedly offers them for lease and rarely for sale. (*Id.* ¶ 9.) He focuses on "domain names that he believes are clever or marketable" and believed that the combination of the words "cell" or "cellular" and "innovation" to form "celluvation" fit that bill. (*Id.*)

Accordingly, Mr. Pace purchased celluvation.com on or about May 14, 2011, and registered it through the domain name registrar Epik, located in Sammamish, Washington. (*Id.* ¶¶ 6, 10.) Before purchasing, he allegedly conducted an internet search and "found no evidence of any use or planned use for the term 'celluvation.'" (*Id.* ¶ 11.) Moreover, at the time of purchase, there was "no material traffic to the domain and no reason to expect a meaningful traffic flow." (*Id.* ¶ 12.) Although Mr. Pace received five offers to buy the domain name, he has never tried to sell the domain name and has not responded to any offers. (*Id.* ¶ 13.) Mr. Pace was not actively creating the content on celluvation.com; instead, he allowed a monetizer of domain names, Sedo.com, to feature advertisements and links on celluvation.com based on internet searches—a process called "parking" the website. (*Id.* ¶ 16.) The parked celluvation.com featured links to "anime

---

[2] For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

and animation websites," none of which refer to or use Mr. Daniel's trademarks. (*Id.* ¶¶ 16, 32.)

Mr. Daniel sells "a series of metal and chemical products" that "uses clarifying transmutational technology" to, amongst other benefits, remove "toxic electrical, dirty energy" and "reverse aging." (*Id.* ¶ 14.) He created a website at "eaccrc.com" on or about May 6, 2016, to sell these products and uses the term "Celluvation" as part of his brand. (*Id.*) He owns trademarks on the word "celluvation" and a design utilizing that word, limited to cosmetic products, filed with the patent and trademark office on May 18, 2018, and October 2, 2018, respectively. (*Id.* ¶ 15.)

Mr. Pace asserts that he has not traded upon "any goodwill or reputation" enjoyed by Mr. Daniel as it relates to the Celluvation brand, and that at no time did Mr. Pace trade upon or use Mr. Daniel's trademarks. (*Id.* ¶¶ 23-25.) He further asserts that he has "never sold, transferred, or trafficked" the domain name celluvation.com, which has, at all times, been parked at Sedo.com. (*Id.* ¶¶ 31-32.) Moreover, he denies having any intent to divert consumers from Mr. Daniel's website, denies the possibility of confusion between his domain name and Mr. Daniel's products, and denies providing any misleading or false information when applying for or maintaining the registration of the domain name. (*Id.* ¶¶ 23, 31, 33-34.) Thus, Mr. Pace alleges that his use of celluvation.com is fair or otherwise lawful. (*Id.* ¶ 35.)

On July 28, 2020, Mr. Daniel filed a complaint with the World Intellectual Property Organization ("WIPO") and initiated an arbitration proceeding against Mr. Pace pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP"), which sets

out the process for contesting domain name registrations through private arbitrators. (*Id.* ¶ 17.) The UDRP does not have an appeal process and instead directs the losing party to file a declaratory judgment action to review the panelist arbitrators' decision. (*Id.*) As the complainant, Mr. Daniel consented to the jurisdiction of the court in which the domain name registrar—Epik—is located. (*See id.* ¶¶ 6, 17.)

Epik locked the domain name celluvation.com when the WIPO accepted Mr. Daniel's complaint on July 30, 2020. (*Id.* ¶ 18.) The panelist arbitrators rendered a decision on September 11, 2020, that required Mr. Pace to transfer celluvation.com to Mr. Daniel. (*Id.* ¶ 22.) Mr. Pace alleges that the decision "represent[s] a significant departure from the written standards contained in the UDRP." (*Id.*)

Due to the impending transfer, Mr. Pace filed the present suit to effectively appeal the panelist arbitrators' decision. (*See generally* Compl.) He seeks declaratory judgment that he did not violate the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C.§ 1125(d) (*id.* ¶¶ 37-47) and that he did not violate the Lanham Act, 15 U.S.C. § 1114(a) (*id.* ¶¶ 48-53). He also brings a reverse domain name hijacking claim under 15 U.S.C. § 1114(2)(D)(v) that alleges the celluvation.com domain name has been suspended despite lawful registration or use. (*Id.* ¶ 54.) Mr. Daniel's instant motion followed. (*See* MTD.) On February 10, 2021, this matter was reassigned to the undersigned judge. (*See* 2/10/21 Min. Order (Dkt. # 14).)

### III.   ANALYSIS

Mr. Daniel makes two arguments for dismissal: first, that this court lacks personal jurisdiction over him, and second, that Mr. Pace fails to sufficiently plead any of his three

claims.³ (*See* MTD at 4-11.) The court addresses the jurisdictional argument first before turning to the sufficiency of the complaint. *See, e.g.*, *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 991 (9th Cir. 2009) ("[P]ersonal jurisdiction is a threshold issue . . . and the erroneous exercise of personal jurisdiction deprives all subsequent proceedings of legal effect.").

**A.  Personal Jurisdiction**

A motion to dismiss for lack of personal jurisdiction is governed by Rule 12(b)(2). *See* Fed. R. Civ. P. 12(b)(2). "[T]he plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). If the court decides the motion without conducting an evidentiary hearing, "the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)). Although a plaintiff cannot simply rest on the bare allegations of the complaint, the court must accept uncontroverted allegations in the complaint as true, and conflicts between parties over statements in affidavits must be resolved in the plaintiff's

---

³ The court construes Mr. Daniel's *pro se* briefing broadly. *See Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006). Mr. Daniel notes that "even assuming the Complaint did satisfy the *Twombly* and *Ashcroft* standards, each count fails in its own right to state a cognizable claim" (MTD at 2 (italics added)) but provides no further argument and instead focuses his arguments on the lack of factual allegations (*id.* at 5-11). The court presumes that Mr. Daniel is arguing Mr. Pace's claims are not based on a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (allowing dismissal if claim is based on lack of cognizable legal theory or absence of facts alleged under cognizable legal theory). This argument is unavailing, as all three of Mr. Pace's claims are based on a cognizable legal theory.

favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Boschetto*, 539 F.3d at 1015 (citations omitted).

Forum selection clauses in contracts are presumptively valid. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (citing *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)). As such, forum selection clauses "should be honored 'absent some compelling and countervailing reason.'" *Id.* (quoting *Bremen*, 407 U.S. at 12). The party challenging the clause "bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust.'" *Id.* (quoting *Bremen*, 407 U.S. at 12-13, 15, 18). Enforcement might be unreasonable if the clause was the product of fraud or overreaching, if enforcement would deprive a party of his day in court, or if enforcement would contravene a strong public policy. *Id.*

Here, the UDRP contains a forum selection clause stating that every complainant consents to the jurisdiction of the court in which the domain name registrar is located. (Compl. ¶ 17.) Courts routinely uphold the UDRP forum selection clause. *See, e.g.*, *Green Jacket Auctions Inc. v. Augusta Nat'l Inc.*, No. CV-18-01276-PHX-GMS, 2018 WL 5281631, at *2 (D. Ariz. Oct. 24, 2018). Mr. Daniel does not make any showing that enforcement of this forum selection clause would be unreasonable or unjust; instead, he purports that the complaint fails to state sufficient facts showing that personal jurisdiction exists. (MTD at 5; Reply at 2.) The court disagrees. The complaint states that Mr. Daniel, as the complainant, consented to the jurisdiction of this court, which is where Epik, the domain name registrar, is located. (*See* Compl. ¶¶ 6, 17.) Moreover, Mr. Pace offers declaratory testimony that each complainant "must agree to the UDRP's

1  jurisdiction and venue selection requirements."[4]  (Pace Decl. (Dkt. # 10) ¶ 6.)  Indeed,
2  Mr. Daniel, in his WIPO complaint, agreed to "submit, with respect to any challenges
3  that may be made by [Mr. Pace] to a decision by the [panelist arbitrators] . . . to the
4  jurisdiction of the courts at the location of [Epik]." (*Id.* ¶ 3, Ex. A ¶ 30.)  The court
5  concludes that this evidence establishes proper jurisdiction and thus denies Mr. Daniel's
6  motion to dismiss for lack of personal jurisdiction.

**B.     Failure to State a Claim**

Having determined that the court has jurisdiction over this matter, the court now turns to Mr. Daniel's remaining argument that none of Mr. Pace's claims are sufficiently pled.  Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The court construes the complaint in the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  *Wyler Summit P'ship*, 135 F.3d at 661.  However, it is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

//

---

[4] Mr. Daniel complains that Mr. Pace may not "cure a deficient pleading by making a statement beyond the complaint." (Reply at 2.)  But in determining jurisdiction, the court may consider evidence presented in affidavits.  *See Doe*, 248 F.3d at 922.

1  v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content . . . to draw the reasonable inference that the defendant is liable." *Id.* at 677-78.

The court finds that Mr. Pace sufficiently states a claim upon which relief can be granted for all three of his claims. First, as to the ACPA claim for declaratory relief, Mr. Pace sufficiently pleads that at least one of the elements of an ACPA claim is missing. The ACPA prohibits "cybersquatting," or the practice of registering "the domain name of a well known trademark and then attempt[ing] to profit from this by either ransoming the domain name back to the trademark holder or by . . . divert[ing] business from the trademark holder." *Bosley Med. Institute, Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005). Thus, to prevail on an ACPA claim, the trademark holder must establish, amongst other elements, that the domain name owner registered the domain name "with a bad faith intent to profit." *Id.* at 681. Bad faith is, in turn, analyzed through a non-exclusive nine-factor test, including whether the domain owner had a bona-fide non-commercial use for the domain name; had an intent to divert from the trademark holder's website to his own; offered to transfer or sell the domain name for financial gain; provided material and misleading false contact information when obtaining the domain name; failed to maintain accurate contact information; or registered multiple domain names that he knows are identical or confusingly similar to other trademarks. *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 946-47 (9th Cir. 2002); 15 U.S.C. § 1125(d)(1)(B)(i).

//

Accepting all allegations in Mr. Pace's complaint as true, he has alleged sufficient facts to state a claim to declaratory relief under the ACPA, specifically that he had no bad faith intent to profit.[5]  He alleges that he does not sell goods or services from celluvation.com and instead "parks" the domain name, which can be a bona-fide non-commercial use.  (Compl. ¶¶ 16, 32, 44); *see Dent v. Lotto Sport Italia SpA*, No. CV-17-00651-PHX-DMF, 2020 WL 1170840, at *9-10 (D. Ariz. Mar. 11, 2020).  He further alleges that he had no intent to divert traffic from Mr. Daniel's website and that indeed, before purchasing celluvation.com, he was unaware of any use of the term "celluvation" or material traffic to celluvation.com.  (Compl. ¶¶ 11-12, 33.)  Moreover, the complaint alleges that Mr. Pace has never offered to sell the domain name despite five offers.  (*Id.* ¶¶ 13, 31.)  Mr. Pace states that he has never provided material and misleading false contact information when registering celluvation.com and has maintained accurate contact information.  (*Id.* ¶ 34.)  And finally, he states that although he purchases domain names, he does so based on names he believes are "clever or marketable," not because he knows they bear on other trademarks.  (*Id.* ¶ 9.)

At its root, Mr. Daniel's challenge centers not on whether there are sufficient factual allegations in the complaint—there are—but rather that those factual allegations are wrong.  For instance, he contends that "[i]n fact, [Mr. Pace] acted in bad faith" and presents his own set of facts as to Mr. Pace's "hid[ing of] contact information" and his

//

---

[5] The parties also disagree on whether the complaint sufficiently pleads that Mr. Daniel's trademark is not distinctive (Resp. at 6, Reply at 2-3), but because the court finds sufficient allegations of a lack of bad faith, it does not comment on any other element.

1  "regist[ration of] multiple domain names which [he] knows are identical or confusingly
2  similar to marks of others." (MTD at 8-9; *see also* Reply at 5-6.) He challenges Mr.
3  Pace's statements as "lack[ing] credibility" and "absolutely false," and Mr. Daniel
4  allegedly offers "[t]he truth," supported by his own declaration and several exhibits.
5  (MTD at 9-10; *see* Daniel Decl. (Dkt. #7-1).) But at this stage, the court cannot credit
6  Mr. Daniel's assertions over Mr. Pace's well-pleaded allegations to the contrary. *See*
7  *Atigeo LLC v. Offshore Ltd., D*, No. C13-1694JLR, 2014 WL 239096, at *4 (W.D. Wash.
8  Jan. 22, 2014). Furthermore, "extraneous evidence should not be considered in ruling on
9  a motion to dismiss." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925
10 (9th Cir. 2001). Accordingly, the court denies Mr. Daniel's motion to dismiss the ACPA
11 declaratory judgment claim.

12  The court reaches the same conclusion for the Lanham Act declaratory judgment
13 claim. A trademark infringement under the Lanham Act requires a showing that Mr.
14 Daniel has valid, protectable trademarks and that Mr. Pace's use of the marks in
15 commerce is likely to cause confusion. *See Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F.
16 Supp. 3d 755, 765 (C.D. Cal. 2015). Likelihood of consumer confusion is analyzed
17 through an eight-factor test, including the strength of the mark; the proximity or
18 relatedness of the goods; the intent in selecting the mark; and the likelihood of expansion
19 of the product lines. *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098,
20 1106 (9th Cir. 2016).
21  Mr. Pace alleges that his use of celluvation.com does not have a likelihood of
22 causing consumer confusion with Mr. Daniel's products. (Compl. ¶¶ 23, 52.) To support

this, he states that Mr. Daniel sells "metal and chemical products" in the field of cosmetics and health, whereas celluvation.com has been "parked" and features links to anime and animation websites with no reference to Mr. Daniel or his products. (*Id.* ¶¶ 14, 16.) These allegations speak to the lack of proximity of the goods at issue and the small likelihood of any expansion of the product lines. Moreover, Mr. Pace asserts that his intent was to secure the clever combination of the word "celluvation," not to infringe upon Mr. Daniel's trademarks. (*Id.* ¶ 9.) Indeed, Mr. Pace pleads no knowledge of the term "celluvation" at the time of purchase and that he could not have known about Mr. Daniel's trademarks because Mr. Daniel did not create his website until 2016 and did not apply for trademarks until 2018. (*Id.* ¶ 9, 11.) These factual allegations illustrate both the limited strength of the mark and Mr. Pace's intent in purchasing celluvation.com. Again, Mr. Daniel's argument attacks the validity of these factual allegations and introduces new facts on when he filed trademark applications. (*See* MTD at 9-10.) These arguments are unavailing. The court concludes that the complaint has stated a Lanham Act claim for declaratory relief that is plausible on its face.

Lastly, Mr. Pace has sufficiently pled his reverse domain name hijacking claim, which seeks relief from the current suspension and impending transfer of celluvation.com to Mr. Daniel. A reverse domain name hijacking claim requires the plaintiff to establish that (1) he is the domain name registrant; (2) that the domain name has been suspended, disabled, or transferred by a registrar; (3) that the trademark holder has notice of the action; and (4) that the plaintiff's registration or use of the domain name is not unlawful. *Strong College Students Moving Inc. v. College Hunks Hauling Junk Franchising LLC*,

No. CV-12-01156-PHX-DJH, 2015 WL 12602438, at *8 (D. Ariz. May 15, 2015). Mr. Pace pleads that he owns celluvation.com and that celluvation.com was disabled and will be transferred to Mr. Daniel. (Compl. ¶¶ 10, 18, 22.) There is no question that Mr. Daniel has notice of this action, as he has been served and has filed the instant motion. (*See* MTD; Not. (Dkt. # 6).) And as stated above, the court finds sufficient allegations of fact supporting Mr. Pace's contention that his registration and use of celluvation.com was lawful. Mr. Daniel's arguments otherwise fail for the same reasons as articulated above.

### IV. CONCLUSION

Based on the foregoing reasons, the court DENIES Mr. Daniel's motion to dismiss (Dkt. # 7).

Dated this 19th day of February, 2021.

JAMES L. ROBART
United States District Judge