Honorable Judge Tana Lin

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| STANLEY PACE, an individual<br><br>Plaintiff,<br><br>v.<br><br>JOS DANIEL, an individual,<br><br>Defendant. | Case No. 2:20-cv-01455-TL<br><br>**AMENDED DECLARATION OF KEITH SCULLY IN SUPPORT OF OFFER OF PROOF**<br><br>**TRIAL DATE:**<br>**July 5, 2022** |

I, Keith Scully, declare as follows:

1. I am counsel of record for Plaintiff Stanley Pace in this matter, over the age of 18, and competent to testify to the matters stated herein.

2. On July 28, 2020, Defendant Jos Daniel filed a Uniform Doman-Name Dispute Resolution Policy ("UDRP") arbitration complaint against Plaintiff Stanley Pace with the World Intellectual Property Organization. Evidence of the UDRP complaint is admissible to lay foundation to the claims at issue here. Both Daniel and Pace would be able to testify about the complaint and the information contained therein.

3. On September 11, 2020, the UDRP panelist rendered a decision in favor of Daniel and ordered that the Domain Name be transferred to him. Evidence of the UDRP panelist ruling is admissible to (1) lay foundation for suit in this Court; (2) show that the impending transfer of the Domain Name to Daniel is forcing Pace to bring this action to protect his intellectual property

DECL. OF K. SCULLY RE OFFER OF PROOF— 1
[Case No. 2:20-CV-01455-TL]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

rights, ultimately causing him to retain counsel and incur substantial fees and costs; (3) demonstrate that Pace faces losing valuable rights in the Domain Name.

4. This court's review is de novo and the UDRP Panelist's decision is entitled to no weight. Pace was represented by a different attorney during the UDRP process. That attorney prepared a declaration that Pace had searched for but not found any trademark registrations for celluvation.com. Pace did not search for trademarks but instead for evidence of use on the internet. The UDRP Panelist allowed Daniel to submit a supplemental declaration even though the UDRP rules do not provide for any additional information. The Panelist did not allow for a response and some of the information in Daniel's declaration was untrue. Attachment A to this declaration is a copy of the UDRP Panelist's decision.

5. Pace was notified of the UDRP's panelist ruling on September 17, 2020 and filed his complaint in this Court within ten business days on September 30, 2020. This timeframe is admissible to establish that Pace complied with the UDRP requisite that once a panelist decision is rendered, the losing party has ten business days from the date the parties are notified of the decision to file a declaratory judgment action, or the decision is implemented.

6. Pace would testify that he is in the business of registering domain names and owns 60,000 of them. Specifically, he selects domain names that he believes are clever or marketable, including the domain name at issue in this case, "celluvation." He does not acquire domains that he knows are identical or confusingly similar to distinctive marks. This testimony is relevant to lay foundation that Pace has a legitimate interest in the domain and has no bad faith intent to profit from Daniel's trademark.

7. Pace would testify that he is the owner of the domain name celluvation.com (the "Domain Name"), which he purchased at an auction around May 14, 2011. He will also testify that before purchasing the Domain Name, he conducted an internet search and found no evidence of any use or planned use of the term "celluvation." He did so by using Google to look for the word "celluvation." Given Google's accuracy, if he did not find any use of the term in all of the search results, that is a reliable indicator that the term is not in use on the internet. At the time he purchased the Domain Name, there was no material traffic to the domain and no reason

DECL. OF K. SCULLY RE OFFER OF PROOF— 2
[Case No. 2:20-CV-01455-TL]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

to expect a meaningful traffic flow. He used Google Analytics, which tracks unique visitors to each website, to determine traffic flow before he decided to bid on the domain name. This testimony is admissible to show Pace has not used or registered the Domain Name in bad faith and has no bad faith intent to profit from Daniel's trademark.

8. Pace would testify that around May 6, 2016—five years after Pace purchased the domain name—Daniel created a website at <eaccrc.com> which sells a series of metal and chemical products that Daniel calls "brain crystals" and "energy crystals." The website also sells an "aalere bracelet" that Daniel claims "uses clarifying trans-mutational technology" to remove "toxic electrical, dirty energy," from radio frequency and "5G" broadcasts, along with a range of other trinkets and powders. This website currently uses the term "celluvation." Daniel owns the word mark "celluvation" and a stylized design utilizing that word. Those trademark applications were filed with the patent and trademark office on May 18, 2018 and October 2, 2018, respectively. Both are limited to cosmetic products. This evidence is relevant to negate the claim that there is any connection or possibility of confusion between Pace's website and Daniel's products, and that there is no secondary meaning of the term. Exhibits 1 and 6 would be admitted, showing screenshots from the eaccrc.com website, and Exhibits 2 and 7-8, showing trademark history and registration.

9. Further, Pace would testify that he "parks" the Domain Name with an international monetizing company, Sedo.com. A "parked" domain name features advertisements and links based on internet searches for the domain name. A parked domain earns revenue when an internet user arrives at the domain and then clicks on a link within one of the advertisements. That link then transits the user to the advertiser's website, and the advertiser pays a small fee to the domain owner for each user. For example, Exhibit 3 shows a set of advertisements displayed on celluvation.com. One of them is for "Discount Anime T Shirts." If an internet user clicked on the link, they would be transited to a website that sold T Shirts. The T-Shirt website owner would then pay Pace for the internet traffic. Pace would testify that his parked website at celluvation.com features links to anime and animate websites, and there is no reference to cosmetics, Daniel, his trademarks, or his magical crystals and amulets. This testimony is relevant

DECL. OF K. SCULLY RE OFFER OF PROOF— 3
[Case No. 2:20-CV-01455-TL]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

to show Pace's use of the term as a domain name has not traded upon any goodwill or reputation enjoyed by Daniel as it relates to the products or services that Daniel offers. Nor is there any connection or possibility of confusion between Pace's website and the products that Daniel offers to the general public. Exhibit 3 would be admitted, showing Pace's use of the celluvation.com domain name.

10. Pace would also testify that he never tried to sell the Domain Name. Although he received five offers from the Sedo marketplace, he never responded to any. This testimony is relevant to show that Pace never registered or used the Domain Name in bad faith as defined by 15 U.S.C. § 1125. It is also relevant to show that Pace's use of the Domain Name is a fair and otherwise lawful use of the term.

11. Pace would testify that he never traded upon or used Daniel's trademarks for his business of monetizing domain names. Nor did he ever sell, transfer, or traffic in the Domain Name. Rather, Pace will testify that the Domain Name has been consistently "parked" at Sedo.com, where links to various other websites not owned by Pace can be obtained by users who land on celluvation.com. None of these third party websites refer in any way to Daniel's trademarks. This testimony is relevant to show that Pace has utilized the Domain Name in a bona fide manner for bona fide purposes and that his use of the term "celluvation" as a domain name has not traded upon any goodwill or reputation enjoyed by Daniel as it relates to the products or services that Daniel offers.

12. Pace would testify that he never intended to divert consumers from Daniel's online location to a site accessible under the Domain Name. This testimony is relevant to prove that Pace had no intent to harm the goodwill represented by the mark.

13. Additionally, Pace would testify that he never provided material and misleading false contact information when applying for the registration for the Domain Name. He will explain that he always maintained accurate contact information with respect to the Domain Name or with respect to any other domain name. This testimony is relevant to establish that Pace's use of the Domain Name has been lawful and has not infringed upon Daniel's mark.

14. Pace would also testify that as a result of the impending transfer of the Domain

DECL. OF K. SCULLY RE OFFER OF PROOF — 4
[Case No. 2:20-CV-01455-TL]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

Name, he has been forced to retain counsel and incur substantial fees and costs to bring this suit to protect his rights in his intellectual property. This evidence is admissible to establish that Pace is entitled to his attorney's fees.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 11, 2022

                          s/ Keith Scully
                          Keith Scully

DECL. OF K. SCULLY RE OFFER OF PROOF— 5
[Case No. 2:20-CV-01455-TL]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

# Attachment A



ARBITRATION
AND
MEDIATION CENTER

# ADMINISTRATIVE PANEL DECISION
Jos Daniel v. Privacy Administrator, Anonymize, Inc. / Stanley Pace
Case No. D2020-1966

## 1. The Parties

Complainant is Jos Daniel, United States of America ("United States"), represented by Chyrkin Law, Ukraine.

Respondent is Privacy Administrator, Anonymize, Inc., United States / Stanley Pace, United States, represented by Law Office of Howard M. Neu, PA, United States.

## 2. The Domain Name and Registrar

The disputed domain name <celluvation.com> (the "Domain Name") is registered with Epik, Inc. (the "Registrar").

## 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on July 28, 2020. On July 30, 2020, the Center transmitted by email to the Registrar a request for registrar verification in connection with the Domain Name. On August 4, 2020, the Registrar transmitted by email to the Center its verification response confirming that Respondent is listed as the registrant and providing the contact details.

The Center verified that the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2 and 4, the Center formally notified Respondent of the Complaint, and the proceedings commenced on August 4, 2020. In accordance with the Rules, paragraph 5, the due date for Response was August 24, 2020. On August 21, 2020, the Respondent contacted the Center regarding an extension to the Response filing period. Pursuant to paragraph 5(b) of the Rules, the Response due date was extended until August 28, 2020. The Response was filed with the Center on August 27, 2020.

Complainant submitted an unsolicited "Additional Statement" on August 28, 2020, with annexes. In its discretion, the Panel has chosen to consider this filing.

The Center appointed Robert A. Badgley as the sole panelist in this matter on September 7, 2020. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

**4. Factual Background**

Since 2007, Complainant's company has manufactured and sold cosmetic products, including beauty masks, creams, and lotions, under the trademark CELLUVATION.

Complainant holds two current trademark registrations for the CELLUVATION trademark with the United States Patent & Trademark Office ("USPTO"). Specifically, Complainant holds USPTO Reg. No. 5,465,519, registered on May 8, 2018, for the word mark CELLUVATION, and USPTO Reg. No. 5,574,679, registered on October 2, 2018, for the stylized mark CELLUVATION. Both marks show a date of first use in commerce of January 1, 2007.

The Domain Name was first registered on April 9, 2007. According to Complainant, he was the original owner of the Domain Name, but his former business partner allegedly "stole" the Domain Name and subsequently "lost" it.

Respondent asserts that he acquired the Domain Name on May 14, 2011, after placing the highest bid at an auction. Respondent states that he owns approximately 60,000 domain names, and that he "is in the business of acquiring and using for business purposes (…) various domain names when they become available".

The Domain Name currently resolves to a parking page which contains various hyperlinks, such as "Design Software", "Discount Anime T Shirts," and "Online Animation Degrees." Complainant alleges that Respondent derives per-click revenue through these hyperlinks, and Respondent does not deny this. Respondent does note, however, that none of the hyperlinks relates to cosmetic products or beauty masks, which are the products Complainant sells under its CELLUVATION mark.

As of March 16, 2019, the Domain Name resolved to a parking page that advertised the Domain Name as being for sale.

Respondent states that his registration of the Domain Name (May 14, 2011) occurred seven years before Complainant had secured the USPTO trademark registrations discussed above (both in 2018), and therefore he could not have been aware of Complainant's CELLUVATION mark at the time he registered the Domain Name. Specifically, Respondent stated (with emphasis added):

"There was absolutely no way that Respondent could know or should know of Complainant's trademarks, though he researched the U.S.P.T.O. for any existing U.S. trademarks and found none on May 14, 2011…"

In his Additional Statement, Complainant notes that, although the two USPTO registered trademarks discussed above were not registered until 2018, Complainant had previously held two USPTO registered trademarks in previous years, both of which were subsequently canceled because Complainant had failed to file a renewal declaration with the USPTO. Specifically, Complainant's company Celluvation Skin Cares, LLC held: (1) USPTO Reg. No. 3,404,701 for stylized mark CELLUVATION, registered on April 1, 2008, and canceled on November 7, 2014; and (2) USPTO Reg. No. 3,660,326 for word mark CELLUVATION, registered on July 28, 2009, and canceled March 4, 2016.

Thus, it appears that, on May 14, 2011 (the date on which Respondent states that he searched the USPTO database for any CELLUVATION marks but claims to have found none), there were in fact two active registered trademarks for CELLUVATION, both owned by Complainant's company.

**5. Parties' Contentions**

**A. Complainant**

Complainant contends that it has satisfied all three elements required under the Policy for a transfer of the Domain Name.

**B. Respondent**

Respondent asserts, as was set forth above, that he has a legitimate interest in the Domain Name, and that he did not register or use the Domain Name in bad faith.

**6. Discussion and Findings**

Paragraph 4(a) of the Policy lists the three elements which Complainant must satisfy with respect to the Domain Name:

(i) the Domain Name is identical or confusingly similar to a trademark or service mark in which Complainant has rights;  and
(ii) Respondent has no rights or legitimate interests in respect of the Domain Name;  and
(iii) the Domain Name has been registered and is being used in bad faith.

**A. Identical or Confusingly Similar**

The Panel concludes that Complainant has rights in the mark CELLUVATION through registration and use demonstrated in the record.  The Panel also finds that the Domain Name is identical to that mark.

Complainant has established Policy paragraph 4(a)(i).

**B. Rights or Legitimate Interests**

Pursuant to paragraph 4(c) of the Policy, Respondent may establish its rights or legitimate interests in the Domain Name, among other circumstances, by showing any of the following elements:

(i) before any notice to you [Respondent] of the dispute, your use of, or demonstrable preparations to use, the Domain Name or a name corresponding to the Domain Name in connection with a *bona fide* offering of goods or services;  or
(ii) you [Respondent] (as an individual, business, or other organization) have been commonly known by the Domain Name, even if you have acquired no trademark or service mark rights;  or
(iii) you [Respondent] are making a legitimate noncommercial or fair use of the Domain Name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue.

The Panel concludes that Respondent lacks rights or legitimate interests in respect of the Domain Name.  The chief problem Respondent faces in this proceeding is his lack of credibility with the Panel.  This is based on his unambiguous statement that, on May 14, 2011, when he registered the Domain Name, he had searched the USPTO database for any CELLUVATION trademark and found none.  As set forth above, this cannot be a true statement, since, as of May 14, 2011, there were two live registered USPTO trademarks for CELLUVATION, both of which happened to be registered in connection with Complainant's cosmetic products.

Given this blatant falsehood, the Panel cannot credit any of Respondent's bare assertions, including his claim that he was unaware of Complainant's CELLUVATION trademark as of May 14, 2011.  The Panel finds

on this record that Respondent was aware of the trademark, derived commercial gain through commercial hyperlinks at his parking page (based on the content of his current website), and ultimately sought to sell the Domain Name at a profit (based on the content of his site on March 16, 2019).  Such conduct plainly does not give rise to rights or legitimate interests under the Policy.

Complainant has established Policy paragraph 4(a)(ii).

### C. Registered and Used in Bad Faith

Paragraph 4(b) of the Policy provides that the following circumstances, "in particular but without limitation", are evidence of the registration and use of the Domain Name in "bad faith":

(i)     circumstances indicating that Respondent has registered or has acquired the Domain Name primarily for the purpose of selling, renting, or otherwise transferring the Domain Name registration to Complainant who is the owner of the trademark or service mark or to a competitor of that Complainant, for valuable consideration in excess of its documented out of pocket costs directly related to the Domain Name;  or
(ii)    that Respondent has registered the Domain Name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name, provided that Respondent has engaged in a pattern of such conduct;  or
(iii)   that Respondent has registered the Domain Name primarily for the purpose of disrupting the business of a competitor;  or
(iv)   that by using the Domain Name, Respondent has intentionally attempted to attract, for commercial gain, Internet users to Respondent's website or other online location, by creating a likelihood of confusion with Complainant's mark as to the source, sponsorship, affiliation, or endorsement of Respondent's website or location or of a product or service on Respondent's website or location.

The Panel concludes that Respondent registered and used the Domain Name in bad faith.  The Panel incorporates its finding in the previous section that Respondent, on this record and given Respondent's lack of credibility, was aware of Complainant's mark, and was more likely than not motivated primarily to derive commercial gain by targeting Complainant's CELLUVATION trademark and selling the Domain Name for a sum in excess of his out-of-pocket costs, in violation of the above-quoted Policy paragraph 4(b)(i).

In the alternative, Complainant is in violation of the above-quoted Policy paragraph 4(b)(iv) by deriving per-click revenue at his website, which site likely would not have been reached except by consumers searching for Complainant.

Complainant has established Policy paragraph 4(a)(iii).


### 7. Decision

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the Domain Name <celluvation.com> be transferred to Complainant.



*/Robert A. Badgley/*
**Robert A. Badgley**
Sole Panelist
Date:  September 11, 2020