UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STANLEY PACE, an individual,<br><br>　　　　　Plaintiff(s),<br>　v.<br><br>JOS DANIEL, an individual,<br><br>　　　　　Defendant(s). | CASE NO. 2:20-cv-01455-TL<br><br>FINDINGS OF FACT, CONCLUSIONS OF LAW, AND POST-TRIAL DECLARATIONS AND ORDERS |

This matter came before the Court for a bench trial on July 5, 2022.

**I.   PROCEDURAL BACKGROUND**

On July 28, 2020, Jos Daniel, Defendant-Counterclaim Plaintiff ("Defendant") in this action, initiated a Uniform Domain-Name Dispute Resolution Policy arbitration ("UDRP Complaint") against Stanley Pace, Plaintiff-Counterclaim Defendant ("Plaintiff"), before the World Intellectual Property Organization ("WIPO") Arbitration and Mediation Center regarding the internet domain name celluvation.com ("Disputed Domain"). Dkt. No. 47-1. The WIPO Arbitration and Mediation Center appointed a panelist who issued a decision ("WIPO Decision") against Pace and ordered the Disputed Domain transferred to Daniel. Dkt. No. 42-1 at 5.

On September 30, 2020, Plaintiff Pace filed the Complaint in this case raising a claim for reverse domain name hijacking under 15 U.S.C. § 1114(2)(D)(v) and seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 that his registration and use of the internet domain name celluvation.com does not violate: (1) the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C §1125(d) or (2) the Lanham Act, 15 U.S.C. § 1114(a). *See generally* Dkt. No. 1. Defendant Daniel filed an Answer and Counterclaim on February 27, 2021, asserting counterclaims for: (1) trademark infringement, 15 U.S.C § 1114(1); (2) unfair competition, 15 U.S.C. § 1125(a); and (3) violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C §1125(d). *See generally* Dkt. No. 16.

This case was originally set for trial on March 28, 2022. Dkt. No. 19. On February 3, 2022, the parties were informed of the Court's need to reset the trial date to accommodate its schedule and were asked to submit a joint status report within 7 days to assist the Court in amending the case management schedule. Dkt. No. 23. On February 10, Plaintiff filed a status report without input from Defendant, noting Defendant's refusal to confer as ordered by the Court. Dkt. No. 24. The Court contacted the parties via email for a status update. *See* Dkt. No. 27 at 2. Plaintiff informed the Court that he remained ready for trial, but Defendant never responded. *Id.* On February 18, 2022, the Court entered an Order Resetting Bench Trial Date and Related Dates amending upcoming deadlines, rescheduling the pretrial conference for June 28, and resetting the one-day bench trial to July 5. Dkt. No. 25. On June 8, 2022, the Court issued an Order to Show Cause that, among other things, cautioned Defendant to review the February 18, 2022, amended scheduling order. Dkt. No. 27.

Defendant, who is proceeding *pro se* in this action, did not appear for the pretrial conference on June 28, 2022. Dkt. No. 33. On June 28, 2022, the Court entered a pretrial order

which informed the parties that the trial would proceed via Zoom as previously scheduled. Dkt. No. 34.

Between June 27, 2022, and July 5, 2022, Defendant emailed a number of documents to the Court (addressed to various parties), stylized as "Due Process" notices which the Court filed on the docket. *See generally* Dkt. Nos. 32, 35, 36, 37, 38, and 41. The notices question the Court's authority to hear the case against him. *Id.*

On July 5, 2022, Plaintiff appeared for trial and was represented by Keith Scully of Newman & Du Wors LLP. Defendant did not appear at the bench trial. Dkt. No. 40. The Court recessed for 30 minutes to allow additional time for Defendant to appear, but Defendant did not appear. The Court convened, noted Defendant's absence on the record, and proceeded with the bench trial. Plaintiff had already submitted a written offer of proof. Dkt. No. 39. However, the Court directed Plaintiff to file an amended offer of proof to address specific issues the Court had identified in the pretrial briefing.

## II.    EVIDENCE

The evidence offered for admission consists of: (1) Plaintiff's offer of proof (Dkt. No. 42) which includes a copy of Defendant's UDRP Complaint (Dkt. No. 47-1) and WIPO Decision (Dkt. No. 42-1); (2) Declaration of Stanley Pace Re: Facts Stated in Offer of Proof (Dkt. No. 49, hereinafter Pace's Decl.);[1] and (3) the six exhibits included in Plaintiff's pretrial exhibit list:[2]

---

[1] Plaintiff Pace declares under penalty of perjury that "[i]f called to testify, [he] would testify to all facts contained in [the offer of proof]." Dkt. No. 49 at ¶ 2. As such, citations to the factual record herein will be to the offer of proof at Dkt. No. 42, unless otherwise noted.

[2] Plaintiff references Exhibit 2 as well as "Exhibits 7-8" in the offer of proof as being offered to show "trademark history and registration." Dkt. No. 42 at ¶¶ 8-9. There was no Exhibit 7 or 8 included in Plaintiff's pretrial exhibit list. *See* Dkt. No. 31. Instead, Plaintiff included as Exhibits 2, 4, and 5 documents from the United States Patent and Trademark Office and its website regarding the trademark history and registration of the word mark "celluvation" and a stylized design utilizing that word. *Id.* Although Plaintiff does not reference Exhibits 4-5 in his offer of proof, the Court understands them to be the documents incorrectly referenced as Exhibits 7-8. *Compare* Dkt. No. 42 at ¶¶ 8-9 *with* Dkt. No. 31.

|   |   |
|---|---|
| Exhibit 1: | Screenshots from eaccrc.com |
| Exhibit 2: | Search Results from Trademark Electronic Search System search for "CELLUVATION" |
| Exhibit 3: | Screenshot from celluvation.com |
| Exhibit 4: | USPTO Trademark certificates |
| Exhibit 5: | Trademark history |
| Exhibit 6: | Additional screenshots from eaccrc.com |

(Dkt. No. 31).

As Defendant failed to appear for the pretrial conference and the trial, the Court finds it appropriate to accept Plaintiff's offer of proof and Pace's Decl. in lieu of live testimony. *See* Fed. R. Civ. P. 16(f) ("the court may issue any just orders . . . if a party or its attorney fails to appear at a scheduling or other pretrial conference"); Fed. R. Evid. 611(a)(2) ("[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . avoid wasting time"). *See also In re Adair*, 965 F.2d 777, 779 (9th Cir. 1992) ("[T]he use of written testimony 'is an accepted and encouraged technique for shortening bench trials.'") (citation omitted). Further, the Court ADMITS Plaintiff's Exhibits 1-6, the statements made by Daniel in Defendant's UDRP Complaint,[3] and the WIPO Decision into evidence.

### III.    PLAINTIFF'S CLAIMS

Having considered the only evidence before the Court — *i.e.*, Plaintiff's offer of proof, Pace's Decl., Exhibits 1-6, and the relevant record, the Court now ENTERS these Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a) regarding Plaintiff's claims. Any conclusion of law misidentified as a finding of fact shall be deemed a conclusion of law, and any finding of fact misidentified as a conclusion of law shall be deemed a finding of fact.

---

[3] Fed. R. Evid. 801(d)(2)(C).

A. **Findings of Fact**

1. On July 28, 2020, Daniel filed a Uniform Doman-Name Dispute Resolution Policy arbitration complaint against Pace with the World Intellectual Property Organization. Dkt. No. 47-1.

2. In his UDRP Complaint, Daniel stated: "In accordance with Paragraph 3(b)(xiii) of the Rules [for Uniform Domain Name Dispute Resolution Policy], the Complainant [Daniel] will submit, with respect to any challenges that may be made by the Respondent [Pace] to a decision by the Administrative Panel to transfer or cancel the domain name that is the subject of this Complaint, to the jurisdiction of the courts at the location of the principal office of the concerned registrar." Dkt. No. 47-1 at ¶ 30.

3. On September 11, 2020, the WIPO arbitration panel rendered a decision in favor of Daniel and ordered that the Disputed Domain be transferred to him. Dkt. Nos. 42 at ¶¶ 3-4; 42-1 at 5.

4. On September 17, 2020, Pace was notified of the arbitration ruling and filed his complaint in this Court within ten business days on September 30, 2020. Dkt. No. 42 at ¶ 5.

5. The domain name celluvation.com is registered with Epik, Inc. Dkt. Nos. 42-1 at 2; 47-1 at ¶ 8.

6. Epik, Inc. is headquartered in Sammamish, Washington. Dkt. No. 47-1 at ¶ 8.

7. Defendant Daniel owns the word mark "celluvation" and a stylized design utilizing that word. Dkt. No. 42 at ¶ 8.

8. The relevant trademark applications were filed with the patent and trademark office on May 18, 2018, and October 2, 2018, respectively, with first use in 2007. *Id.*; Exs. 2, 4-5.

9. Both registrations are limited to cosmetic products. *Id.*

10. Daniel was the owner of the Disputed Domain but admits that his business partner stole it and subsequently lost it. Dkt. No. 47-1 at ¶ 13.

11. Pace is in the business of registering domain names and owns over 60,000 of them. Dkt. No. 42 at ¶ 6.

12. Pace selects domain names that he believes are clever or marketable, including the Disputed Domain. *Id.* Pace does not acquire domains that he knows are identical or confusingly similar to distinctive marks. *Id.*

13. Pace originally purchased the Disputed Domain at an auction on or about May 14, 2011. Dkt. No. 42 at ¶ 7.

14. Before purchasing the Disputed Domain, he conducted an internet search and found no evidence of any use or planned use of the term "celluvation." He did so by using Google to look for the word "celluvation." *Id.*

15. Pace used Google Analytics, which tracks unique visitors to each website, to determine traffic flow before he decided to bid on the Disputed Domain. *Id.*

16. At the time Pace purchased the Disputed Domain, there was no material traffic to celluvation.com and no reason to expect a meaningful traffic flow. *Id.*

17. Given Google's accuracy, Pace relied on the lack of returned hits for the search term as an indicator that the term was not in use on the internet. *Id.*

18. On or about May 6, 2016, Daniel created a website at eaccrc.com selling a series of metal and chemical products that Daniel calls "brain crystals" and "energy

crystals," as well as an "aalere bracelet" that Daniel claims "uses clarifying trans-mutational technology" to remove "toxic electrical, dirty energy" from radio frequency and "5G" broadcasts, along with a range of other health products. Dkt. No. 42 at ¶ 8; Exs. 1, 6. Among other things, Daniel claims his jewelry and health products "hydrate and rejuvenate the body from the inside out" and can reverse aging. *Id.*

19. Daniel's website currently uses the term "celluvation." *Id.*

20. Pace "parks" the Disputed Domain with an international monetizing company, Sedo.com. Dkt. No. 42 at ¶ 9.

21. A "parked" domain name features advertisements and links based on internet searches for the domain name. *Id.*

22. A parked domain earns revenue when an internet user arrives at the domain and then clicks on a link within one of the advertisements. *Id.* That link then transits the user to the advertiser's website, and the advertiser pays a small fee to the domain owner for each user. *Id.*

23. The Disputed Domain has been consistently "parked" at Sedo.com. *Id.* at ¶ 11.

24. Pace's parked website at celluvation.com features links to anime and animation websites. *Id.* ¶ 9, Ex. 3.

25. None of the linked third-party websites refer in any way to Daniel's trademarks. *Id.* at ¶ 11.

26. Pace has always maintained accurate contact information with respect to the Disputed Domain. *Id.* at ¶ 13.

27. There is no reference to cosmetics, Daniel, his trademarks, or the products Daniel offers at eaccrc.com on the parked website at the Disputed Domain. *Id.*

28. Pace has never sold, transferred, or trafficked in the Disputed Domain, despite having received five offers. *Id.* at ¶¶ 10-11.

29. Pace never intended to divert consumers from Daniel's online location to a site accessible under the Disputed Domain. *Id.* at ¶ 12.

30. The WIPO arbitration panelist ruled that Pace must transfer the Disputed Domain to Daniel based on a finding that Pace violated the ACPA. The WIPO arbitration panelist found that Pace lacked credibility based on his assertion that he searched for a CELLUVATION trademark but did not find one. Dkt. No. 42-1 at 4-5.

31. Pace's attorney in the WIPO proceeding prepared a declaration that Pace had searched for but not found any trademark registrations for celluvation.com. Dkt. No. 42 at ¶ 4. Pace did not search for trademarks but instead for evidence of use on the internet. *Id.*

B. **Conclusions of Law**

   1. **Jurisdiction**

1. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the causes of action arise under federal law and under 28 U.S.C. § 1338 because the claims relate to federal copyright and trademark laws.

2. Plaintiff challenged the WIPO Decision within ten days of its issuance as required by the Uniform Domain Name Dispute Resolution Policy. *WIPO Guide to the Uniform Domain Name Dispute Resolution Policy (UDRP)*, Section F. The Administrative Panel Decision, https://www.wipo.int/amc/en/domains/guide (last visited Sept. 7, 2022).

3. Defendant Daniel consented to the jurisdiction of the court in which the domain name registrar is located with respect to any challenge to the decision of the

WIPO arbitration panelist. Dkt. No. 47-1 at ¶ 30. The domain name registrar for the Disputed Domain is Epik, which is headquartered in Sammamish, Washington. *Id*. at ¶ 8. Therefore, this Court has personal jurisdiction over Daniel.

2. **Standard of Review**

4. This Court considers Pace's challenge of the WIPO arbitration panel's decision *de novo*. *Stenzel v. Pifer*, 2006 WL 1419016, at *5 (W.D. Wash. May 22, 2006) (collecting cases); *accord ISystems v. Spark Networks, Ltd.*, 2012 WL 3101672, at *3, n.11 (5th Cir. Mar. 21, 2012), *judgment entered*, 2012 WL 3115964 (5th Cir. Mar. 21, 2012).

3. **ACPA Claim**

5. Pace seeks a declaratory judgment that he did not violate the ACPA. An ACPA claim requires showing: (1) a valid trademark that is entitled to protection; (2) the mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit. *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 681 (9th Cir. 2005).

6. Plaintiff's Trial Brief states that he only disputes the second and fifth factors. Dkt. No. 29 at 5.

7. In determining distinctiveness, the court's function is to "'determine, based on the evidence before it, what the perception of the purchasing public is.'" *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (quoting *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999)).

8. No evidence has been presented establishing that the celluvation mark is distinctive or famous.

9. In determining whether a person has a bad faith intent under the ACPA, a court considers nine non-exclusive statutory factors:

   a. the trademark or other intellectual property rights of the person, if any, in the domain name;

   b. the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

   c. the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

   d. the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

   e. the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

   f. the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

   g. the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

   h. the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

      i.      the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)(B)(i).

10. While Daniel has word marks related to the term "celluvation," all of the other relevant factors weigh in favor of Pace, based upon the evidence presented to the Court.

11. Pace never intended to divert consumers from Daniel's online location to a site accessible under the Disputed Domain that could harm the goodwill represented by the mark. Prior to purchasing the domain name, Pace used Google Analytics to determine that there was no material traffic to the domain and found no evidence of the use of the term "celluvation" on the internet.

12. Nor has Pace's use of the term "celluvation" as a domain name traded upon any goodwill or reputation enjoyed by Daniel as it relates to the products or services that Daniel offers. The Disputed Domain only features links to anime and animation websites so there is no possibility of confusion that Pace's animation themed website might be sponsored by or affiliated with the body rejuvenating products offered by Daniel to the general public. Further, none of the 3rd party websites linked to the Disputed Domain refer to or use in any manner Daniel's trademark.

13. Pace's business is registering domain names, and he owns over 60,000 of them. At all times that Pace has owned the Disputed Domain, it has consistently been "parked" at Sedo.com, a recognized monetizer of domain names, wherein links to various other websites not owned by Pace (and unrelated to the products offered by Daniel) can be obtained by the user who lands on the parked website at

|   |   |   |
|---|---|---|
| 1 |  | celluvation.com. Pace states he has never tried to sell the Disputed Domain and, |
| 2 |  | in fact, has not responded to five offers to do so. |
| 3 | 14. | Pace did not provide material and misleading false contact information when |
| 4 |  | applying for the registration of the Disputed Domain. Pace did not fail to maintain |
| 5 |  | accurate contact information with respect to the Disputed Domain or any other |
| 6 |  | domain name. |
| 7 | 15. | As discussed earlier, no evidence has been presented to the Court that the mark |
| 8 |  | celluvation is distinctive or famous. |
| 9 | 16. | Considering the totality of the Section 1125 factors, the Court finds that Pace did |
| 10 |  | not register or use the Disputed Domain in bad faith as defined by the ACPA. |
| 11 | 17. | Accordingly, the Court also holds that Pace's registration and use of |
| 12 |  | celluvation.com does not violate Daniel's rights under the ACPA. |

### 4. Lanham Act Claim

18. Pace also seeks a declaration that his use of celluvation.com does not violate the Lanham Act. A Lanham Act trademark infringement claim requires proof that Daniel has a valid, protectable mark, and that Pace's use of the domain name is likely to cause consumer confusion. *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018).

19. Daniel has word marks for the term celluvation so the issue before the Court is whether Pace's use of the domain name is likely to cause confusion.

20. Likelihood of consumer confusion is weighed by using the non-exclusive factors outlined in the *Sleekcraft* test: (1) the strength of the mark; (2) the proximity of relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND POST-TRIAL DECLARATIONS AND ORDERS - 12

likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)).

21. As previously discussed, no evidence has been presented regarding the strength of the celluvation mark. Further, no evidence was introduced to demonstrate actual confusion, the marketing channels used, or the care likely to be exercised by purchasers, so the Court does not consider these factors. Nor was evidence provided regarding the likelihood of expansion of the product lines. However, as Pace and Daniel are clearly not offering competing goods, this factor is irrelevant in this case. *Sleekcraft*, 599 F.2d at 354 (a trademark owner is afforded greater protection against competing goods).

22. Given the facts of this case, the two most pertinent factors are the proximate relatedness of the goods and the intent of Pace in selecting the website domain.

23. The Court finds that there is no proximity of relatedness or similarity between the anime and animation links contained on the parked website at celluvation.com with the body rejuvenating products offered by Daniel.

24. Pace purchased the Disputed Domain because he thought it was clever or marketable. His actions—such as having consistently "parked" the domain, linked to anime and animation websites that are completely unrelated to Daniel's products, and not responding to requests to purchase it—demonstrate he did not act in bad faith to try to cause confusion with Daniel's products.

25. Given how wildly different and completely unrelated the products are from each other, the Court also finds that Pace's use of the Disputed Domain is not likely to cause confusion with Daniel's mark.

26. Accordingly, the Court holds that Pace's registration and use of the Disputed Domain does not violate the Lanham Act.

### 5. Reverse Domain Name Hijacking Claim

27. Pace also seeks relief against Daniel for Daniel's attempt to seize the Disputed Domain through the UDRP process. A cause of action for reverse domain name hijacking requires showing: (1) that Plaintiff is a domain name registrant; (2) that the domain name has been suspended, disabled, or transferred under a policy implemented by a registrar as described in 15 U.S.C. § 1114(2)(D)(ii)(II); (3) that the owner of the mark has notice of the action by service or otherwise; and (4) that the Plaintiff's registration or use of the domain name is not unlawful under the Lanham Act. *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 626 (4th Cir. 2003) (citing 15 U.S.C. § 1114(2)(D)(v)).

28. Plaintiff provided evidence that he bought the Disputed Domain in 2011.

29. The WIPO decision ordered the registrar to transfer the Disputed Domain to Defendant.

30. Defendant had notice of this action as he filed an answer as well as counterclaims to Plaintiff's Complaint. Defendant also registered to electronically file and receive electronic service in this case. Dkt. No. 6.

31. For the reasons stated in Section III.B.4, *supra*, the Court holds that Pace's registration and use of the Disputed Domain is not unlawful under the Lanham Act.

32. Therefore, the Court holds that Pace has successfully established a claim for reverse domain name hijacking.

### IV. DEFENDANT'S COUNTERCLAIMS

"Dismissal with prejudice and default on counterclaims, for willful and inexcusable failure to prosecute, are proper exercises of discretion under Federal Rules of Civil Procedure 41(b), 16(f), and the inherent power of the court." *Al-Torki v. Kaempen*, 78 F.3d 1381, 1385 (9th Cir. 1996); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962); *Malone v. United States Postal Serv.*, 833 F.2d 128, 130 (9th Cir.1987); *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir.1986); *Kung v. FOM Inv. Corp.*, 563 F.2d 1316, 1318 (9th Cir.1977); *Cunningham v. United States*, 295 F.2d 535, 536 (9th Cir.1961).

On June 8, Defendant was ordered to show cause by no later than June 15 why the Court should not impose sanctions for ignoring the Court's order for the Parties to confer and prepare a joint status report. Dkt. No. 27. The Court cautioned Defendant to review the trial scheduling order setting the date and time for the pretrial conference and bench trial. *Id.* at 1-2. Defendant was warned that "Federal Rule of Civil Procedure 16(f)(1)(C) provides that the Court, upon motion by a party or on its own, may issue 'any just orders . . . if a party . . . fails to obey a scheduling or other pretrial order' . . . . [and] that a failure to respond to court orders may result in sanctions up to and including the dismissal of counterclaims for a failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b)." *Id.* at 2.

Defendant failed to timely respond to the Court's order to show cause. The Court received Defendant's untimely response on June 27, 2022, but Plaintiff failed to establish good cause for ignoring the Court's orders. *See* Dkt. No. 32.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND POST-TRIAL DECLARATIONS AND ORDERS - 15

Defendant then failed to appear at the pretrial conference held as scheduled on June 28. After the pretrial conference, the Court entered a pretrial order reiterating its intent to proceed with the bench trial as scheduled on July 5. Dkt. No. 34. Defendant failed to appear at the bench trial.

The Court has received multiple notices from Defendant, improperly filed and addressed to various parties, stylized as "Due Process" notices that appear to oppose the Court's authority to hear the case against him, but Defendant seeks no cognizable relief from the Court's jurisdiction. *See generally* Dkt. Nos. 35, 36, 37, 38, and 41. None of these purported pleadings offer any coherent support for any of Defendant's counterclaims or defenses to Plaintiff's claims.

Defendant has willfully and inexcusably failed to prosecute his case or comply with the Court's scheduling and case management orders. Therefore, the Court dismisses Defendant's counterclaims with prejudice.

## V.    ATTORNEY'S FEES

Plaintiff seeks attorney's fees under the Lanham Act, which provides for an award of attorney's fees to the prevailing party at the discretion of the court in "exceptional cases." 15 U.S.C. § 1117(a). A trademark case is generally considered exceptional for purposes of awarding of attorneys' fees when a party has taken positions that can be characterized as "malicious, fraudulent, deliberate or willful," *Gracie v. Gracie*, 217 F.3d 1060, 1071 (9th Cir. 2000), or "groundless, unreasonable, vexatious, or pursued in bad faith." *Stephen W. Boney, Inc. v. Boney Services, Inc.*, 127 F.3d 821, 827 (9th Cir. 1997).

There is no evidence that Defendant's claims in the WIPO arbitration or in this action were groundless, unreasonable, vexatious, malicious, fraudulent, unreasonable, or pursued in bad faith. The factors considered under the WIPO policy are slightly different than the legal standards that apply to the claims brought under the statutes in this case. Nevertheless, the WIPO

panelist found Pace lacked credibility primarily because he stated he conducted a trademark search when he registered the Disputed Domain and did not find any celluvation trademark when there were in fact two. While Pace satisfactorily explained this discrepancy to the Court, the fact remains that Defendant prevailed in the WIPO proceeding. Further, Defendant provided a reasonable and colorable defense in his Answer. He just ceased participating in the litigation process, so the Court was bound to make a decision based upon the facts presented at trial. Therefore, the Court will not award Pace attorney's fees in this matter.

## VI.   Declaration and Order

The Court herby DECLARES and ORDERS:

1. Pace's use of the celluvation.com domain does not violate the ACPA.
2. Pace's use of the celluvation.com domain does not violate the Lanham Act.
3. Pace has established a claim for reverse domain name hijacking.
4. Defendant's counterclaims against Plaintiff are DISMISSED WITH PREJUDICE for willful and inexcusable failure to prosecute and failure to comply with court orders pursuant to Fed. R. Civ. P. 41(b).
5. Pace's request for fees is DENIED.
6. The WIPO arbitration panel decision is OVERTURNED, and the domain name registrar for celluvation.com is ORDERED to lift the hold on the domain name and return the domain to Pace.
7. Judgment shall be entered in favor of Plaintiff.

Dated this 13th day of September 2022.

Tana Lin
United States District Judge
